# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **JUAN CHAVEZ DOMINGUEZ,** | § | |
| **TDCJ No. 1100953,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-07-CA-222-FM** |
| | § | |
| **RICK THALER,[1] Director** | § | |
| **Texas Department of Criminal Justice–** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Petitioner Juan Chavez Dominguez's *pro se* petition[2] for a writ of

habeas corpus by a person in state custody which he brought pursuant to 28 U.S.C. § 2254.

Therein, Dominguez challenges his aggravated assault conviction.[3] In his answer,[4] Respondent

---

[1] Dominguez originally named Nathaniel Quarterman as the Respondent. Rick Thaler succeeded Quarterman as the Director on July 15, 2009. Under Federal Rule of Civil Procedure 25(d)(1), Thaler is automatically substituted as the Respondent.

[2] Pet. [Docket No. 1]. Dominguez claims the Texas Department of Criminal Justice released him from prison and he discharged his sentence on April 17, 2009. *See* Notification of Address Change [Docket No. 21]. A petitioner's release may moot his habeas petition because a petition generally challenges prison officials' authority to keep a prisoner in custody. *Lane v. Williams*, 455 U.S. 624, 632 (1982). If the challenged conviction will cause a petitioner to suffer some future collateral consequences, however, the petition may not be moot. *Id.*; *Carafas v. Lavalle*, 391 U.S. 234, 237 (1968). Here, because Dominguez challenges the validity of his underlying criminal conviction, which may affect his ability to vote, engage in certain businesses, serve as juror, or hold public office, he can satisfy the case-or-controversy requirement of Article III of the Constitution. *Carafas*, 391 U.S. at 237; *see also Lane*, 455 U.S. at 624 (holding that where prisoner only challenges his sentence, and not his conviction, *Carafas* does not apply). Accordingly, the Court will address his claims.

[3] *State v. Dominguez*, Cause No. 20010D05837 (205th Dist. Ct., El Paso County, Tex. Apr. 26, 2002), *aff'd*, No. 08-02-00211-CR, 2004 WL 1658350 (Tex. App. – El Paso July 26, 2004, pet. ref'd).

[4] Resp. with Br. in Supp. [Docket No. 15].

asks the Court to dismiss Dominguez's petition on the grounds that his claims are procedurally barred, fail to raise cognizable federal habeas issues or are without merit. After carefully examining the record and for the reasons set forth herein, the Court will deny Dominguez's petition. Additionally, the Court will *sua sponte* deny Dominguez a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

On February 11, 2001, Dominguez became upset because his wife, Yvette Dominguez ("Yvette"), had spent the day with her twin sister, Yvonne Cervantes ("Yvonne"), and had not cooked his dinner. During an argument which ensued after Yvette returned home, Dominguez punched his wife in the face with his fist and knocked her and their two-month-old son, whom she was holding, into a dresser. Dominguez then grabbed the baby, shook him, and threw him onto a bed. Dominguez proceeded to beat Yvette by punching her all over her body with his hands, and hitting her in the face with his knees. When Dominguez left the house, Yvette contacted her sister for help. Upon seeing her severely beaten sister, Yvonne called the police.

An El Paso County grand jury returned a two-count indictment against Dominguez for aggravated assault. Count one alleged that Dominguez caused serious bodily injury to Yvette. Count two alleged that Dominguez caused bodily injury to Yvette with a deadly weapon, namely, his hand or knee. The State dismissed count one and proceeded to trial on count two.

At trial, Yvette testified that Dominguez's attack lasted about thirty minutes. She claimed her husband had over twenty years of martial arts training and he used the training during the attack, though she conceded during cross-examination that an individual did not have to be a martial arts expert to make a fist. She said that after Dominguez stopped beating her, he would

not leave until she called his cell phone and left a message saying that some "cholos"[5] had beaten her. Yvette then described her condition after the assault:

> I was just hurting everywhere, inside, so bad. I just wanted to keep breathing and keep my mentality going, because I felt like I was going to pass out. I was bleeding so bad, I couldn't control the bleeding. I was afraid that I wasn't going to be able to stop the bleeding.

> And everything hurt. Everything. And my throat was swollen. And I couldn't see no more after a while. My eyes swelled up so bad I couldn't see through them no more.

> My nose was so busted I had to try to breathe through my mouth.[6]

Yvette added during her testimony that she still had problems breathing through her nose, ringing in her right ear, pain in her lower back and ribs, and swelling in her knee.

Yvonne testified that when she arrived at Yvette's house, she saw a severely beaten woman. She explained that her sister was bleeding profusely and had a big bump on her forehead. She described Yvette's eyes as swollen and closed. Yvonne said she called the police for help. The paramedics arrived before the police and immediately took Yvette to the hospital.

Officer David Briones, a patrol officer for the El Paso Police Department, testified he responded to the dispatch and located Yvette at the hospital. He said that when he found Yvette, she had bruises around her neck, on her back, and on her left arm. Briones said Yvette was visibly upset and in pain. He added he arrested Dominguez at the hospital.

Officer Briones further testified, after being qualified as an expert in deadly weapons, that hands could be used as weapons and that, in his experience as a police officer, he had learned of

---

[5] "Cholo" is the local slang word for gang member.

[6] *Dominguez*, 2004 WL 1658350 at *1.

people who had died from assaults with hands and feet. Additionally, he said that he had personally come across instances where victims were severely injured by assaults with hands and feet, including one case which resulted in serious internal injuries.

Dr. Richard Saunders, the emergency room physician who treated Yvette, testified that when he first saw her, she had swelling around both eyes, on her forehead, and on the right posterior of her skull. X-rays revealed a fractured nose. She also had a small laceration above her right eyebrow. He said Yvette complained of a hearing loss and, upon inspection, he found blood behind her right eardrum. She also complained of chest pain, neck pain, and back pain. Dr. Saunders said he was particularly worried about a concussion, as Yvette did not remember whether she had lost consciousness. He explained that he ran a number of tests to rule out injuries such as subdural hematoma, cerebral contusions, orbital fractures, or vertebrae fractures. According to Dr. Saunders, such injuries, could cause memory loss and a change in cognitive function. Dr. Saunders further testified that he had heard of people being seriously injured or killed as the result of assaults by hands and feet, though he personally had never seen such a case.

Jeanne Ochoa testified that she met Dominguez after the assault through a dating service and began going out with him. She said Dominguez admitted to her that he was married, his wife had filed charges against him for assault, and he did, in fact, assault her. She added Dominguez said he beat his wife very badly with his hands, and, at the time of the assault, his wife was holding their child. Ochoa said he described his wife as unidentifiable after the incident.

After hearing the evidence, the trial court's charge, and the arguments of counsel, the jury found Dominguez guilty of aggravated assault, as alleged in count two of the indictment. The

jury further found Dominguez used deadly weapons, his hands and knees, during the offense. The jury assessed Dominguez's punishment at seven years' confinement. The trial court sentenced Dominguez in accordance with the jury's verdicts. Dominguez timely filed a notice of appeal to the Eighth Court of Appeals in El Paso.

Dominguez raised three issues in his direct appeal. First, he asserted the evidence was legally insufficient to establish he used his hands and knees as deadly weapons. Second, Dominguez maintained the trial court committed harmful error by not allowing him to question the jury panel during voir dire on the concept of lesser-included offenses. He explained his counsel attempted to discuss the concept, but the trial court sustained the State's objection to voir dire on this subject. Third, Dominguez challenged the trial court's decision to allow evidence of certain extraneous bad acts during the punishment stage of the trial on the ground that he had no notice of these acts. Specifically, he claimed he had no notice that the State would introduce evidence he fathered a child out of wedlock, urged his son to lie to his mother, and abused drugs and alcohol.

The Eighth Court of Appeals, after considering the evidence in the light most favorable to the verdict, found that a rational jury could have concluded that Dominguez used his hands and knees in a manner capable of causing serious bodily injury. Thus, it concluded the evidence was legally sufficient to establish Dominguez used them as a deadly weapon. Further, it concluded that even if the trial judge erred in not permitting questions proffered by Dominguez's counsel during voir dire concerning lesser-included offenses, this error was harmless. It reasoned the trial judge instructed the jury to consider the lesser-included offense of assault if it found Dominguez was not guilty of aggravated assault with a deadly weapon. Finally, it concluded the trial court

did not err when it allowed evidence of extraneous bad acts during the punishment phase. It explained that because Dominguez did not challenge the adequacy of the State's notice, he failed to preserve error regarding the evidence of his illegitimate child. It also found that because the jury sentenced Dominguez to less time than the State sought, the evidence that he urged his son to lie to his mother was harmless. It further noted that the evidence implying Dominguez abused drugs and alcohol was not, in fact, admitted into evidence. Accordingly, the Eighth Court of Appeals overruled Dominguez's objections and affirmed the judgment of the trial court.

Nearly seven months after his conviction became final, Dominguez filed his first state habeas application in which he alleged that his counsel provided ineffective assistance when he failed to notify him of his right to file a petition for discretionary review. The Texas Court of Criminal Appeals granted relief and permitted Dominguez to file an out-of-time petition.[7] The Court of Criminal Appeals refused his petition for discretionary review on February 8, 2006.[8]

Dominguez filed a second state habeas application on March 6, 2006. Therein, Dominguez asserted four grounds for relief. First, he argued the trial evidence was legally and factually insufficient to establish that he used his hands and knees as deadly weapons. Second, he maintained the trial court erred by not allowing him to question the jury panel on the concept of lesser-included offenses. Third, he asserted the trial court erred in admitting evidence of extraneous bad acts during the punishment phase of his trial. Fourth, he claimed his trial counsel provided ineffective assistance. The Texas Court of Criminal Appeals denied his application

---

[7] *Ex parte Dominguez*, No. WR-62,892-01 (Tex. Crim. App. Oct. 19, 2005).

[8] *See Jimenez v. Quarterman*, __ U.S. __, __, 129 S. Ct. 681, 686-87 (2009) (explaining the one-year limitations period in 28 U.S.C. § 2244(d)(1)(A) begins to run when an out-of-time appeal becomes final).

without written order on November 22, 2006.[9]  The instant petition followed on June 18, 2007.

In his petition, Dominguez raises the same four grounds for relief raised in his second state

habeas application.

## LEGAL STANDARD

"[C]ollateral review is different from direct review,"[10] and the writ of habeas corpus is "an

extraordinary remedy"[11] reserved for those petitioners whom "society has grievously wronged."[12]

It "is designed to guard against extreme malfunctions in the state criminal justice system."[13]

Thus, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow.

"Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[14]

They must generally defer to state court decisions on the merits[15] and on procedural grounds.[16]

They may not grant relief to correct errors of state constitutional, statutory, or procedural law,

unless a federal issue is also present.[17]  They should also be mindful of the significant social

---

[9] *Ex parte Dominguez*, No. WR-62,892-02 (Tex. Crim. App. Nov. 22, 2006).

[10] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[11] *Id.*

[12] *Id.* at 634.

[13] *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

[14] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[15] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[16] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[17] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

costs, including the time and expense involved in retrying a criminal case.[18]  Accordingly, a

federal court should deny a claim decided by a state court on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.[19]

The "contrary to" and "unreasonable application" clauses have independent meanings.[20]  A

federal habeas court may issue the writ under the "contrary to" clause if the state court applies a

rule different from the governing law set forth in Supreme Court cases, or if it decides a case

differently than the Supreme Court has done on a set of materially indistinguishable facts.[21]  A

court may grant relief under the "unreasonable application" clause if the state court correctly

identifies the governing legal principle from Supreme Court decisions, but unreasonably applies

it to the facts of the particular case.[22]  The focus of the latter inquiry is on whether the state

court's application of clearly established federal law is objectively unreasonable.[23]

---

[18] *Brecht*, 507 U.S. at 637.

[19] 28 U.S.C. § 2254(d) (West 2009).

[20] *Williams v. Taylor*, 529 U.S. 362, 404-405 (2000).

[21] *Id.* at 405-406.

[22] *Id.* at 407-408; *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

[23] *Williams*, 529 U.S. at 409-10.

A state court's determination of underlying factual issues is presumed correct, and a petitioner has the burden to rebut the presumption with clear and convincing evidence.[24] Mere disagreement with a state court is not enough; the standard is one of objective reasonableness.[25]

With these principles in mind, the Court turns to Dominguez's claims.

## ANALYSIS

### A.    *Sufficiency of the Evidence*

Dominguez "asserts that the evidence was both legally and factually insufficient to prove that his hands and feet were used as deadly weapons."[26] He claims the trier of fact erred when it concluded he used his hands and feet as deadly weapons.[27] He also maintains the prosecution never established the fact that he caused Yvette's injuries.[28] According to Dominguez, "[t]he burden of the State to prove that the manner of the use of the hands and feet were capable of causing serious bodily injury or death was never met."[29]

When reviewing the legal sufficiency of the evidence, a federal district court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[30] All

---

[24] 28 U.S.C. § 2254(e)(1).

[25] *Montoya*, 226 F.3d at 404.

[26] Pet. 12 [Docket No. 1].

[27] *Id.*

[28] *Id.* at 13.

[29] *Id.*

[30] *Jackson*, 443 U.S. at 319.

credibility choices and conflicts in the evidence are resolved in favor of the verdict.[31]  The question on federal habeas review is not whether the state court complied with all the nuances of state law or if the state court failed to enforce a purely state rule; the question is whether the evidence is constitutionally sufficient to support the conviction.[32]  This means that the evidence need merely satisfy the "'substantive elements of the criminal offense as defined by state law.'"[33]  Moreover, a federal habeas court will give a state court's factual findings great deference.[34]  Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.[35]  Accordingly, the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.[36]

Under Texas law, a person commits an assault by intentionally, knowingly, or recklessly causing bodily injury to another.[37]  An assault becomes an aggravated assault when a person uses or exhibits a deadly weapon during its commission.[38]  A deadly weapon is "anything that in the

---

[31] *United States v. Graves*, 669 F.2d 964, 969 (5th Cir. 1982).

[32] *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

[33] *Id.*

[34] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[35] 28 U.S.C. § 2254(d)(2), (e).

[36] *Id*. at § 2254(e)(1).

[37] Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon 2003).

[38] *Id*. at § 22.02(a)(2).

manner of its use or intended use is capable of causing death or serious bodily injury."[39]  Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[40]

The Eighth Court of Appeals noted that "[h]ands and knees are not deadly weapons per se."[41]  However, it concluded, after reviewing the evidence presented in this case, that a rational jury could have concluded that Dominguez used his hands and knees in a manner capable of causing serious bodily injury.

> Viewing the evidence in the light most favorable to the verdict, we cannot say that it was irrational to conclude that Dominguez's hands and knee qualified as deadly weapons.  The evidence reveals that Dominguez, a "big guy," had trained in the martial arts for over twenty years and that he had participated in a number of tournaments.  Yvette testified that he used this martial arts training during the estimated thirty-minute assault.  Both Officer Briones, who was qualified as an expert in weapons, and Dr. Saunders acknowledged that it was possible for someone to be killed or seriously injured in an assault using hands and feet.  Officer Briones had personally come across at least one such case.  The injuries in this case were severe enough for Dr. Saunders to worry about serious injuries, including subdural hematoma, cerebral contusions, and fractures to the vertebrae.  While Dr. Saunders ruled these serious injuries out, the injuries that did occur included marked swelling around both eyes, the orbits, the forehead, the nose, the lip, and the skull.  Yvette had a laceration above her right eyebrow, blood behind her eardrum that affected her hearing, a fractured nose, pain in her neck, back, and chest, and possibly a concussion.  All these were a result of getting punched in the head "many times," getting kneed in the head, and getting hit all over the body.  Considering this evidence in the light most favorable to the verdict, we

---

[39] *Id*. at § 1.07(a)(17)(B) (Vernon 2003 & Supp.2004).

[40] *Id*. at § 1.07(a)(46).

[41] *Dominguez*, 2004 WL 1658350 at *3.

find that a rational jury could have concluded that Dominguez used his hands and knee in a manner that was capable of causing serious bodily injury.[42]

Given the evidence recited by the Eighth Court of Appeals, evidence that is taken in the light most favorable to the prosecution, a reasonable jury could have found the existence of facts necessary to establish, beyond a reasonable doubt, that Dominguez used his hands and knees in a manner capable of causing serious bodily injury to his wife. Moreover, Dominguez's assertion that the trier of fact somehow erred when it concluded he used his hands and feet as deadly weapons does not met his burden of rebutting the presumption of correctness by clear and convincing evidence. Accordingly, the evidence was legally sufficient to support his conviction and no relief is available to him on this claim.[43]

Additionally, factual insufficiency is strictly a creation of Texas state law under which a state appellate court may examine the fact-finder's weighing of the evidence.[44] "A federal habeas court grants relief when the petitioner is held 'in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"[45] As Dominguez's claim of factual insufficiency is based entirely on

---

[42] *Id.*

[43] 28 U.S.C. § 2254(d)(2).

[44] *Clewis v. State*, 922 S.W.2d 126, 133-34 (Tex. Crim. App. 1996).

[45] *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

Texas law, it does not support a claim for relief under federal habeas law.[46]  Dominguez's factual

insufficiency claim is therefore not cognizable on federal habeas corpus review.[47]

## B.    *Voir Dire Questioning*

Dominguez contends the trial court abused its discretion when it would not permit his

counsel to question potential jurors about a lesser included offense during voir dire.

> Petitioner argues that the trial court's decision to disallow[] the specific
> question regarding the ability of the prospective jurors to understand that they
> could acquit on a higher charge and convict on a lower charge was never
> placed to the prospective jurors during voir dire . . . should have been
> reviewed for an abuse of discretion. . . . and further reviewed under a harm
> analysis.[48]

The Eighth Court of Appeals addressed this claim in Dominguez's direct appeal.  After

reviewing the record, it determined both the State and his counsel had the opportunity to discuss

the different grades of assault while questioning potential jurors.

> During voir dire, counsel for Dominguez attempted to discuss the concept of
> lesser-included offenses.  The State objected to voir dire on this subject.  At
> a bench conference, counsel for Dominguez asserted that he anticipated a
> lesser-included offense charge and that he was entitled to examine the jury
> panel on the law of lesser-included offenses.  He specifically stated the
> question he wanted to ask: "I am just going to ask them if they understand the
> concept you can acquit on a higher charge and convict on a lower charge, and
> see if anybody has a problem with that."  The trial court did not allow this
> question on the grounds that the defense had already covered lesser-included

---

[46] *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a
federal habeas court to reexamine state-court determinations on state-law questions.  In
conducting habeas review, a federal court is limited to deciding whether a conviction violated the
Constitution, laws, or treaties of the United States.").

[47] *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).

[48] Pet. 13-14 [Docket No. 1].

offenses when he discussed the different grades of assault and the requirements for each grade.[49]

In its analysis, the appellate court noted that although the Texas Constitution includes a right to question prospective jurors during voir dire, "a trial court may limit voir dire where the questions are duplicitous or repetitious."[50] It then determined "that the defense had [already] explored the substance of his lesser-included offense question" during voir dire and concluded "the trial court did not abuse its discretion in finding the specific question excluded [w]as repetitious."[51] Moreover, it found "[e]ven if the trial judge erred in not permitting the specific question proffered by the defense, this error was harmless" because the trial court instructed the jury on the lesser-included offense.[52]

"A federal court may grant a habeas corpus application arising from a state-court adjudication on the merits if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"[53] If the Supreme Court "has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the [§ 2254(d)] bar," and habeas relief

---

[49] *Dominguez*, 2004 WL 1658350 at *3.

[50] *Id*. at *4 (citing *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App.1995); *Moncada v. State*, 960 S.W.2d 734, 737 (Tex. App.-El Paso 1997, pet. ref'd)).

[51] *Id.*

[52] *Id.* at *5.

[53] *Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1414 (2009) (quoting 28 U.S.C. § 2254(d)(1)).

is prohibited.[54] "It is not enough, under § 2254, that a Supreme Court case apply 'by extension' to a purported state court violation; the Supreme Court must speak clearly."[55]

The Sixth and Fourteenth Amendments secure an accused's right, in all criminal prosecutions, to a trial by an impartial jury.[56] Voir dire "plays a critical function in assuring the criminal defendant that his . . . right to an impartial jury will be honored."[57] However, because the trial court judge bears the principal responsibility for protecting this right,[58] the Supreme Court has distinguished between questions which tend to expose significant prejudice and questions which have a more tenuous bearing on jury selections.

> The Constitution does not always entitle a defendant to have questions posed during *voir dire* specifically directed to matters that conceivably might prejudice veniremen against him. Voir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." This is so because the "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge."[59]

As a consequence, the Supreme Court has limited constitutional challenges to a trial court's voir dire procedures to issues relating to "[r]acial prejudice and widespread and provocative pretrial

---

[54] *Williams v. Taylor*, 529 U.S. 362, 381 (2000).

[55] *Burgess v. Dretke*, 350 F.3d 461, 469 (5th Cir. 2003).

[56] *Turner v. Murray*, 476 U.S. 28, 36 (1986).

[57] *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

[58] *King v. Lynaugh*, 850 F.2d 1055, 1058 (5th Cir. 1988).

[59] *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976) (citations omitted).

publicity.'"[60]  It has not identified a constitutional right to unlimited questioning concerning lesser included offenses.

In this case, Dominguez does not raise any questions concerning racial prejudice or pretrial publicity.  He merely complains the trial court would not permit his counsel to continue asking potential jurors about their conceptual understanding of a lesser included offense.  The Eighth Court of Appeals decision was neither contrary to nor involved an unreasonable application of clearly established federal law, as determined by the Supreme Court.  Dominguez is not entitled to relief on this claim.

### C.    Evidence of Extraneous Bad Acts

Dominguez asserts he filed a motion before trial for the State to disclose evidence of other crimes, wrongs or acts in accordance with Rule 404(b) of the Texas Rules of Evidence.  Despite his motion, he claims the State failed provide him with notice that it would introduce evidence during the punishment phase that he abused drugs and alcohol, fathered a child out of wedlock, and urged his son to lie to his mother about receiving medicine.[61]

Dominguez's allegations do not attack the validity of his underlying conviction.  Instead, they relate to his sentence.  Because he asserts that he is no longer incarcerated and has discharged his seven-year term of imprisonment, his claims may be moot.[62]  In the alternative, for the reasons outlined below, he is not entitled to relief.

---

[60] *King*, 850 F.2d at 1059.

[61] Pet. 14-15 [Docket No. 1].

[62] *See United States v. Clark*, 193 F.3d 845, 847-48 (5th Cir. 1999) (holding that petitioner's direct appeal of his supervised release was moot because, during the time his appeal was pending, the supervised release ended).

Under Texas Code of Criminal Procedure article 37.07, § 3(a), "the trial court may admit evidence of an extraneous crime or bad act that the trial court determines has been shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible."[63] On a timely request by the defendant, the State must give reasonable notice in advance of trial of the extraneous crimes or bad acts that it intends to introduce during the punishment phase of a trial.[64] The purpose of the notice is to allow a defendant adequate time to prepare for the State's introduction of the extraneous offenses.[65] The reasonableness of the notice turns on the facts and circumstances of each case.[66]

The Eighth Court of Appeals reviewed Dominguez's claim in his direct appeal. It noted the evidence implying Dominguez abused drug and alcohol use was not, in fact, admitted into evidence and explained it would not, therefore, consider this claim.[67] It further noted the State provided Dominguez with a "Second Amended Notice of Extraneous Offenses" which listed eighteen extraneous offenses. Item number 18 alleged that on or about October 1, 2001, Dominguez committed the offense of injury to a child against his son, Diego Dominguez. The

---

[63] *Wilson v. State*, 15 S.W.3d 544, 548 (Tex. App.-Dallas 1999, pet. ref'd); *c.f. Adanandus v. State*, 866 S.W.2d 210, 233-34 (Tex. Crim. App. 1993) (holding as "well-settled" the principle that "absent a showing of unfair surprise, proof of unadjudicated, extraneous offenses at the punishment stage . . . is admissible").

[64] TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

[65] *Scott v. State*, 57 S.W.3d 476, 480 (Tex. App.-Waco 2001, pet. ref'd); *Self v. State*, 860 S.W.2d 261, 264 (Tex. App.-Fort Worth 1993, pet. ref'd).

[66] *Scott*, 57 S.W.3d at 480.

[67] *Dominguez*, 2004 WL 1658350 at *5.

State also provided Dominguez with a list of potential witnesses which included an ex-wife,

Carol Pollet, and a former girlfriend, Jeanne Ochoa.

> At the punishment stage of trial, Carol Pollet testified that she filed for a divorce from Dominguez due to some issues she felt were irresolvable. When asked what those issues were, Dominguez objected on grounds of relevance. The court overruled the objection and allowed Pollet to testify to Dominguez's infidelity and to the fact that he had a child with another woman.
>
>  . . . .
>
> Ochoa described the incident listed as # 18 in the "Second Amended Notice of Extraneous Offenses" as "Injury to Child." Dominguez picked up his son Diego, shook him violently and threw him up against a large sofa. He then took Diego and locked him in a truck for two minutes. Ochoa then described how, on the same day, Dominguez told Diego to tell his mother that he had given him medicine when he did not actually give Diego medicine. At this point, Dominguez objected, contending that this incident involving the medicine was not on the list of extraneous offenses, that it was not even an extraneous offense, and that it was improper and irrelevant. The trial court overruled the objection.[68]

The Eighth Court of Appeals overruled both of Dominguez's remaining objections. It reasoned

"[b]ecause Dominguez did not challenge the adequacy of the State's notice of intent to offer

evidence regarding an illegitimate child at trial, he failed to preserve error on that point."[69] It

further reasoned because the State included injury to a child on its list of extraneous offenses and

Ochoa on its list of witnesses, the trial court did not abuse its discretion in admitting the evidence

that Dominguez urged his son to lie to his mother.[70] Moreover, the Court of Appeals concluded

any error in admitting the evidence was harmless because the jury sentenced Dominguez to less

time than the State sought.

---

[68] *Id*. at *6.

[69] *Id*.

[70] *Id*. at *7.

A state court's adjudication of an issue on the merits is entitled to deference by a federal habeas court.[71] The petitioner has the burden of rebutting the state court's findings by clear and convincing evidence.[72] Moreover, "[a] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law" unless the petitioner asserts that the state law itself violates the Constitution.[73] Under the Constitution, a trial court may admit evidence of unadjudicated, extraneous criminal conduct during the punishment phase of a criminal trial.[74] "An extraneous offense may be admitted into evidence without violating the due process clause if the government makes a 'strong showing that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'"[75]

In this case, Dominguez has not denied that he fathered a child out of wedlock or urged his son to lie to his mother. He has not claimed surprise or alleged that Texas Code of Criminal Procedure article 37.07 somehow violates the Constitution. Therefore, Dominguez has not met his burden of rebutting the state appellate court's findings by clear and convincing evidence. Moreover, he has not established a violation of his constitutional rights. Accordingly, he is not entitled to habeas relief.

---

[71] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[72] 28 U.S.C. § 2254(e)(1).

[73] *Pemberton*, 991 F.2d at 1223.

[74] *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir.2005).

[75] *Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991); *see also Harris v. Cockrell*, 313 F.3d 238, 246 (5th Cir. 2002) (explaining that the introduction of evidence of extraneous offenses, even those of which the defendant has been acquitted, does not violate due process).

D.     *Ineffective Assistance of Counsel*

Dominguez maintains that his counsel provided ineffective assistance when he failed to object to the trial court's ruling against continuing to question potential jurors about lesser included offenses and the introduction of extraneous offenses at his sentencing.  He suggests "this neglect by trial counsel prejudiced his defense."[76]

Dominguez raised this ineffective assistance of counsel claim in his state writ application.[77] The Texas Court of Criminal Appeals denied the application without a written order.[78]  When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as here, it is an adjudication on the merits.[79]  A federal district court may not grant a writ of habeas corpus with respect to any claim which was adjudicated on the merits unless the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[80]

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[81]  Moreover, "the right to

---

[76] Pet. 8 [Docket No. 1].

[77] State Writ R. 30 (Application for Writ of Habeas Corpus).

[78] *Ex parte Dominguez*, No. WR-62,892-02 (Tex. Crim. App. Nov. 22, 2006).

[79] *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) ("In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim.").

[80] 28 U.S.C. § 2254(d).

[81] U.S. CONST. amend. VI.

counsel is the right to the effective assistance of counsel."[82]  To merit relief on an ineffective

assistance of counsel claim, a petitioner must demonstrate both (1) his "counsel's performance

was deficient," and (2) "the deficient performance prejudiced the defense."[83]  A failure to

establish either prong of this test requires a finding that counsel's performance was

constitutionally effective.[84]

The test's performance prong centers on whether counsel's assistance was reasonable,

considering all the circumstances at the time of counsel's conduct.[85]  In order to obtain relief, a

petitioner must establish "that counsel made errors so serious that counsel was not functioning as

the 'counsel' guaranteed the defendant by the Sixth Amendment."[86]  In assessing whether a

particular counsel's performance was constitutionally deficient, "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

---

[82] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[83] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[84] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

[85] *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[86] *Id*. at 687.

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[87]

A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice.[88] The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[89]

The record does not support Dominguez's claim that his counsel failed to object to the trial court's ruling against continuing to question potential jurors about lesser included offenses. Once the trial court sustained the State's objection to this line of questioning, his counsel asked the court to note his exception. Thus, his counsel preserved the purported error for appeal, and the Eighth Court of Appeals addressed it on the merits.[90] Dominguez cannot show his trial counsel's performance was either deficient or prejudiced the defense.

Dominguez's claim that his trial counsel was ineffective for failing to object to the admission of certain evidence during the punishment phase is similarly without merit. His

---

[87] *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[88] *See id*. at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

[89] *Id*. at 694.

[90] *Dominguez*, 2004 WL 1658350 at *3-*5.

counsel timely objected to the evidence, but the trial court overruled his objections.[91] Dominguez cannot overcome the strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance.

Moreover, because the appellate court ultimately rejected these claims, he cannot show that his counsel's alleged deficiency caused him actual prejudice. Accordingly, Dominguez has failed to show the state court's denial of his ineffective assistance of counsel claims was reasonable. His claims are without merit.

## EVIDENTIARY HEARING

If a petitioner fails to develop a factual basis for a claim in state court, a federal habeas court should not conduct an evidentiary hearing on the claim unless (1) the petitioner has shown that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable;[92] or (2) the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence,[93] and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.[94] The record in this case is adequate to dispose fully and fairly of Dominguez's allegations. The Court need inquire no further on collateral review, and an evidentiary hearing is not necessary.

---

[91] *Id*. at *6.

[92] 28 U.S.C. § 2254(e)(2)(A)(i).

[93] *Id.* at § 2254(e)(2)(A)(ii).

[94] *Id.* at § 2254(e)(2)(B).

## CERTIFICATE OF APPEALABILITY

The Antiterrorism and Effective Death Penalty Act requires a certificate of appealability before an appeal may proceed in this matter.[95] "This is a jurisdictional prerequisite because the statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.'"[96]

A justice or judge will not issue a certificate of appealability unless the petitioner makes "a substantial showing of the denial of a constitutional right."[97] This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[98] Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[99] On the other hand, when the Court denies relief based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition

---

[95] 28 U.S.C. § 2253 (West 2009); *see Hallmark v. Johnson*, 118 F.3d 1073,1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. §§ 2254 or 2255 require a certificate of appealability).

[96] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

[97] 28 U.S.C. § 2253(c)(2).

[98] *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotations and citations omitted).

[99] *Id.*; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).

states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."[100]

A district court may deny a certificate of appealability *sua sponte* without requiring further briefing or argument.[101] After considering Dominguez's petition and the record, the Court concludes that reasonable jurists would not find the Court's procedural or substantive rulings debatable; therefore, the Court will not issue a certificate of appealability from its decision.

## CONCLUSION AND ORDERS

After carefully reviewing the petition and record in this cause, the Court finds the decisions of the state courts were not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, the Court concludes Dominguez is not entitled to § 2254 relief. Accordingly, the Court enters the following orders:

1. The Court **DENIES** Petitioner Juan Chavez Dominguez's petition for a writ of habeas corpus by a person in state custody brought pursuant to 28 U.S.C. § 2254 and **DISMISSES** his civil cause **WITH PREJUDICE**.

2. The Court **DENIES** Petitioner Juan Chavez Dominguez a **CERTIFICATE OF APPEALABILITY**.

---

[100] *Beasley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484).

[101] *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

3. The Court additionally **DENIES AS MOOT** all pending motions, if any, in this cause.

**SO ORDERED.**

**SIGNED** this **20th** day of **November 2009.**

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**